STATE OF NORTH CAROLINA v. RONNIE GALE BEGLEY, TERRY LYNN BEGLEY, AND LORI ANN WAY

No. 8428SC242

(Filed 18 December 1984)

1. **Criminal Law § 9.2— robbery and assault—conviction under concerted action principle**

   The State's evidence was sufficient to support conviction of all three defendants for common law robbery and two defendants for assault inflicting serious injury under the concerted action principle where it tended to show that the defendants, acting in concert, struck the victim from behind and rendered him unconscious, put him in a van, and took his wallet containing forty dollars, and that the victim suffered severe head and brain injuries from the assault.

2. **Witnesses § 1.1— mental competency of witness—pretrial motion to disqualify —hearing during trial**

   The trial court did not err in the denial of defendants' pretrial motion to disqualify a witness for mental incompetency where the court noted that defendants could raise the competency issue at the appropriate time during trial and afforded them a voir dire hearing at trial to offer evidence of the incompetency of the witness.

3. **Witnesses § 1.1— mental competency of witness—failure to consider or admit medical records**

   The trial court did not err in failing to consider certain medical records on voir dire in determining the mental competency of an assault and robbery victim to testify or in excluding the records from evidence where the records were not offered for the purpose of proving mental incompetency but for the purpose of impeaching, or at most clarifying, damaging testimony by defendants' own medical witness that the victim was competent to testify.

4. **Witnesses § 1.1— brain damage to witness from assault—competency to testify**

   The trial court did not abuse its discretion in allowing a robbery and assault victim who suffered brain damage from the assault to testify where no factual issues were raised by the evidence on voir dire as to the victim's men-

tal competency, and where defendants' own medical witness testified on voir dire that the victim was mentally competent.

**5. Criminal Law § 66.17— in-court identification—independent origin from pretrial procedures**

A robbery and assault victim's in-court identification of the female defendant was of independent origin and not tainted by any suggestive pretrial procedures where the trial court made findings supported by the evidence that the victim had a good opportunity to observe the female defendant immediately before and during the commission of the crimes, that he paid particular attention to her because of her attractiveness, and that he was extremely certain in his identification of her both in an unplanned pretrial confrontation and in court.

**6. Criminal Law § 104— credibility of witnesses**

The credibility of witnesses is a matter for the jury except where the testimony is inherently incredible and in conflict with the physical conditions established by the State's own evidence.

APPEAL by defendants from *Howell, Judge.* Judgment entered 22 August 1983 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 4 December 1984.

The defendants were each charged in proper bills of indictment with the armed robbery of Frederick Ralph Sprinkle in the amount of $45.00, and the defendants Ronnie Begley and Terry Begley were charged in proper bills of indictment with assault with a deadly weapon with intent to kill inflicting serious injury.

The evidence offered at trial tends to show that Sprinkle visited an Asheville tavern, Roy's Place, during the evening of 26 November 1980. At the tavern he saw Ronnie Begley and Terry Begley, brothers, and Lori Way, Ronnie Begley's girlfriend. Ronnie and Terry Begley came to the tavern together in a van with a Florida license plate driven by Ronnie Begley, where they met Way. Sprinkle played pool with Ronnie Begley and Lori Way. When the defendants started to leave the bar, Sprinkle asked Ronnie Begley for a ride "across the bridge to Burger Bar." As the defendants and Sprinkle were leaving the bar, Sprinkle remembered he had left his coat, and told them, "[y]ou all just go on," and returned to the bar to get his coat. He then walked out of the tavern, around the corner of the building, and towards the van that Ronnie Begley was driving. Someone hit Sprinkle from behind and he was lifted into the van by defendant Way and others. Sprinkle saw Way and Ronnie Begley in the van before he

was struck again from behind and lapsed into unconsciousness. He next remembered crawling up a bank to a road. A passerby later found him unconscious in the road and summoned help.

Sprinkle brought a wallet with $40.00 in it to the tavern. The paramedic who first treated him searched for identification and found no wallet or money. Sprinkle suffered severe head and brain injuries as a result of the assault. Each defendant testified and admitted going to Roy's bar on the evening of 26 November 1980. They denied knowing or seeing Sprinkle at the bar and testified that they left the bar alone in the van and went to a liquor store, a friend's home, and elsewhere.

A jury found defendants Ronnie and Terry Begley guilty of common law robbery and assault inflicting serious injury. Defendant Way was found guilty of common law robbery. The trial court entered judgment sentencing Ronnie Begley to consecutive terms of three years for the robbery offense and two years for the assault offense. Defendant Terry Begley received consecutive sentences of five years on the robbery conviction and two years on the assault conviction. Defendant Way was sentenced to three years on the robbery offense. Defendants appealed.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Guy A. Hamlin, for the State.*

*Swain & Stevenson, P.A., by Joel B. Stevenson, for defendants, appellants Ronnie Gale Begley and Terry Lynn Begley.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender James A. Wynn, Jr., for defendant, appellant Lori Ann Way.*

HEDRICK, Judge.

[1] Defendant Terry Begley contends the evidence was insufficient to require submission of the case against him to the jury on any charges because no evidence placed him at the scene of the assault. Defendant Way contends the evidence was insufficient to support her conviction for common law robbery because there was no evidence of a taking and carrying away of property that belonged to the victim. We disagree with both contentions.

It is not necessary for a defendant to do any particular act constituting at least part of a crime in order to be convicted of that crime under the concerted action principle so long as he is present at the scene of the crime and the evidence is sufficient to show he is acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime. *State v. Joyner*, 297 N.C. 349, 357, 255 S.E. 2d 390, 395 (1979).

When the evidence is considered in the light most favorable to the State it will permit the jury to find that Ronnie and Terry Begley went to Roy's bar together in Ronnie Begley's van, and while at the bar they played pool with Sprinkle, and that the defendants left the bar followed immediately by Sprinkle, and that as he was going to the van he was assaulted by one or more of the defendants, acting in concert. The evidence is likewise sufficient to permit the jury to find that the defendants, acting in concert, put Sprinkle in the van and took from him his wallet containing $40.00. These assignments of error have no merit.

Ronnie and Terry Begley's argument based on their assignments of error numbered 3, 4, 5, 6, 11, and 12, and Way's arguments based on her assignments of error numbered 2 and 22, all relate to questions purportedly raised as to the mental competency of witness Sprinkle to testify in these cases. The defendants made a pretrial "motion in limine" praying "that the Court enter an Order forbidding the District Attorney from eliciting testimony from, or tendering, the witness Sprinkle, unless and until the Court has conducted a hearing to determine and rule upon the competency of the State's witness Sprinkle." The motion was signed by defendants' counsel but not verified, and not supported by any affidavit with respect to the matters alleged in the motion. The trial judge denied the motion but stated, "Of course, if there is a question with regard to identification and that is objected to, the Court will have to conduct a voir dire and such matters as may be relevant in this motion will be raised at that time." At trial, when the State began its examination of Sprinkle, defendants objected and requested a voir dire.

At the voir dire, which covers 97 pages in the record, inquiry was made as to whether Sprinkle's identification of the defendants was tainted by impermissibly suggestive out-of-court iden-

tification procedures, and whether the in-court identification of defendants as perpetrators of the crimes was of independent origin and based upon what he observed at the time of the crimes. There was lengthy testimony by Sprinkle on voir dire as to the extensive injuries he suffered. The evidence disclosed that Sprinkle was struck on the head, rendered unconscious, and as a result suffered brain damage. Defendants offered the testimony of Dr. Kelly concerning his examination of Sprinkle at the Veterans' Administration Hospital at Oteen. Dr. Kelly testified that,

> On December 9th, 1982, the patient came to the Outpatient Department, and he requested an exam to certify whether he was competent to testify against alleged assailants. I did what would be called a screening mental status exam, and this exam tests for the intellectual competence of the patient. And according to my exam and in all phases that I tested, he was intellectually competent. There was no indication of any intellectual impairment at that time. I considered this to be adequate for intellectual testing, and I wrote in my chart that he was mentally competent. I did not notice any prior records at that time, and I say that because if I had, I don't think I would have limited my exam to that extent.

Defendants offered "medical records," made during Sprinkle's course of treatment at Oteen, into evidence on voir dire and later at trial. The trial judge did not consider the "medical records" on voir dire and did not admit them at trial. Defendants now contend the trial judge erred in denying their "motion in limine" and in not considering the "medical records" with respect to issues raised on voir dire and in not allowing the "medical records" into evidence at trial.

"The competency of a witness to testify by reason of mental incapacity is raised by a motion requesting the trial judge to pass on the witness' competency. The resolution of this question rests largely within the discretion of the trial judge." *State v. Newman,* 308 N.C. 231, 253, 302 S.E. 2d 174, 187 (1983) (citing *State v. Benton,* 276 N.C. 641, 174 S.E. 2d 793 (1970); *State v. Robinson,* 283 N.C. 71, 194 S.E. 2d 811 (1973)). A person may be a witness if he "is capable of giving a correct account of the matters which he has seen or heard with respect to the questions at issue." *State v.*

*Benton, supra,* 276 N.C. at 650, 174 S.E. 2d at 799 (citations omitted). The law does not say that the decision of the trial judge as to the competency of a witness shall be controlled by medical evidence. *Id.*

[2]   Assuming arguendo that the "motion in limine" was sufficient to raise the issue of Sprinkle's competency to testify, the trial court did not err in denying the motion before trial and noting that defendants could raise the competency issue again at the appropriate time during trial. G.S. 15A-952(f) provides, "When a motion is made before trial, the court in its discretion may hear the motion before trial . . . or during trial." Further assuming defendants later properly raised the issue when they objected to Sprinkle's identification testimony, the trial judge afforded them a hearing on voir dire to offer evidence in support of any contention as to whether Sprinkle was incapable of giving a correct account of the matters he saw and heard at the scene of the crime.

[3]   Defendants contend the trial judge erred in not considering the "medical records" that were made during the time Sprinkle was being treated at the Veterans' Administration Hospital at Oteen. We note the "medical records" in question were not made part of the record on appeal, do not appear in the transcript, and have not been forwarded to this Court as an exhibit. Thus we do not know precisely what the reports contain. We do know, however, that the "medical records" were not offered into evidence for the purpose of proving mental competency, but for the purpose of impeaching, or at most clarifying, the otherwise damaging testimony of defendants' own witness, Dr. Kelly, that the victim of the brutal assault was competent to testify. We hold that the trial judge did not err in not considering the "medical records" in voir dire and in not allowing them into evidence at trial.

[4]   At the close of the voir dire, the trial judge made findings of fact with respect to the in-court identification by Sprinkle of defendants as the perpetrators of the crimes in question. The trial judge did not make any specific findings of fact or conclusions of law regarding Sprinkle's mental competency. No factual issues were raised by the evidence adduced on voir dire as to Sprinkle's mental competency, and under the circumstances of this case the trial court did not err in not making specific findings or conclusions with respect to Sprinkle's mental competency. We

hold the trial judge did not abuse his discretion in allowing Sprinkle to testify, and these assignments of error are without merit.

[5] Defendant Way contends the in-court identification of her as one of the perpetrators of the crimes was unconstitutionally tainted by an unfair pretrial identification procedure and was improper because it was inherently unreliable and incredible. The test for constitutionality of in-court identification is "whether, under the totality of the circumstances, the identification of defendant at trial was reliable and of independent origin even though the earlier confrontation procedure was suggestive." *State v. Headen*, 295 N.C. 437, 441, 245 S.E. 2d 706, 710 (1978) (citations omitted). The evidence and findings on voir dire show that Sprinkle had a good opportunity to observe defendant Way immediately before and during commission of the crimes, that he paid particular attention to her because of her attractiveness, and that he was extremely certain in his identification of her both in an unplanned pretrial confrontation and in court. The evidence and findings support the trial judge's conclusions that Sprinkle's in-court identification was based on his observations from the day of the crimes, and that suggestive pretrial procedures did not give rise to substantial likelihood of irreparable misidentification.

[6] Nor did the trial judge err in failing to conclude that Sprinkle's testimony was inherently incredible. The credibility of witnesses is a matter for the jury except where the testimony is inherently incredible and in conflict with the physical conditions established by the State's own evidence. *State v. Wilson*, 293 N.C. 47, 51, 235 S.E. 2d 219, 221 (1977). Sprinkle's testimony did not conflict with any physical evidence so as to render it inherently incredible, and the detail and nature of his testimony was sufficiently reliable to submit to the jury.

We hold that the defendants had a fair trial free from prejudicial error.

No error.

Judges WHICHARD and EAGLES concur.